JUL 23 2026 PM 1:55
FILED - USDC - FLMD - TPA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANGELA DEBOSE,

    Plaintiff,

v.                             CASE NO.: 8:25-cv-00828-WFJ-AAS

FLORIDA POLYTECHNIC UNIVERSITY
BOARD OF TRUSTEES,

    Defendant.

_____/

**PLAINTIFF'S MOTION FOR DISQUALIFICATION OF JUDGE WILLIAM F. JUNG
AND MEMORANDUM OF LAW IN SUPPORT PURSUANT TO 28 U.S.C. § 455(a)**

Plaintiff, Angela DeBose, proceeding *pro se*, respectfully moves to disqualify the Honorable William F. Jung from presiding over this action pursuant to 28 U.S.C. § 455(a). In support of this consolidated motion and memorandum, Plaintiff states as follows:

**I. PRELIMINARY STATEMENT**

This consolidated filing establishes that a reasonable, objective lay observer, knowing all the facts, would harbor significant doubts regarding the Court's impartiality. For over fourteen (14) months, this Court maintained a groundless Order to Show Cause that effectively froze Plaintiff's active litigation channel. By holding this matter in an artificial suspension, the Court did not merely delay justice; it actively intervened to shield the Florida Polytechnic University Board of Trustees (FPUBOT) from the mandatory operations of Federal Rule of Civil Procedure 55. This structural asymmetry allowed a non-compliant state entity a "second bite at the apple" to resurrect an otherwise fatal default, while exposing the *pro se* Plaintiff to sweeping, irreparable extrajurisdictional harm across multiple state and federal forums. Because the administrative

record unmasks a pattern of structural accommodation toward a state institution at the direct expense of a citizen's due process, disqualification is mandatory under 28 U.S.C. § 455(a).

## II. STATEMENT OF THE FACTS

1. On May 9, 2025, this Court entered an Endorsed Order to Show Cause, requiring Plaintiff to demonstrate why her complaint was not barred by a pre-filing injunction issued in an entirely separate matter involving the University of South Florida (Case No. 8:21-cv-02127).

2. The pre-filing bar order, originally issued by Judge Merryday, was explicitly cleared for docketing because it did not apply to FPUBOT. The United States Court of Appeals for the Eleventh Circuit subsequently confirmed this narrow boundary, explicitly ruling that the filing restriction "only applies to her employment dispute with [USF]" and the parties in that case.

3. Despite Plaintiff demonstrating that the instant action involves a separate state entity and distinct claims, the Court failed to discharge the order. Instead, it held the case in an administrative freeze from May 9, 2025, until July 17, 2026. During this timeframe, the Court summarily dismissed Plaintiff's motions as "premature" because the groundless Show Cause Order remained pending.

4. Prior to the Show Cause Order, Plaintiff filed a timely Motion for Default Judgment on May 6, 2025, after Defendant completely failed to answer the complaint within statutory limits. On July 17, 2026, the Court discharged its Show Cause Order, denied Plaintiff's default positions, and granted the Defendant an extra twenty-one (21) days to answer.

5. While this Court maintained its 14-month administrative freeze, FPUBOT actively exploited the federal stagnation. The Defendant utilized an unconstitutional, *ex-parte* order

out of the Tenth Judicial Circuit (Polk County) to place Plaintiff's name onto the Florida Supreme Court's Master Registry of Vexatious Litigants (for the first time) in three counties (Polk, Highland, and Hardee). This listing has since bled into separate probate, wrongful death, and active federal appellate dockets, inflicting permanent structural injury while this forum remained silent.

## III. LEGAL STANDARD FOR DISQUALIFICATION

Under 28 U.S.C. § 455(a), any district judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned". The statutory standard is entirely objective: "whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir. 1988).

To mandate recusal, a litigant must generally show an extrajudicial source of bias or demonstrate that the court's ongoing judicial conduct reveals "such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). While ordinary judicial rulings or docket delays do not typically trigger recusal, an extraordinary delay built upon a completely groundless legal premise that functions to strip a matching party of statutory rights creates a powerful, objective appearance of structural bias.

## IV. ARGUMENT

### A. The 14-Month Suspension Conveyed an Asymmetric, Direct Benefit on the Defendant to Subvert FRCP 55

Federal Rule of Civil Procedure 55 provides a strict framework designed to penalize a defendant's total failure to plead or otherwise defend. When a party misses a statutory deadline without a showing of good cause, a default is the mandatory procedural path.

In this matter, this Court stepped outside the conventional bounds of adversarial equity. By holding a legally groundless Show Cause Order in abeyance for 14 months, the Court effectively built an extra-procedural shield around FPUBOT. This administrative delay insulated the non-compliant university from standard default triggers. By capping this delay on July 17, 2026, with an additional 21-day extension to respond, the Court granted the Defendant an unearned "second bite at the apple." This ruling resurrected a corporate defense that should have been fatally extinguished under Rule 55. A neutral observer would reasonably conclude that the procedural timelines were shifted exclusively to protect a state institution from its own default, destroying the appearance of an even-handed forum.

### B. The Court's Inaction Inflicted Irreparable Extrajurisdictional Harm by Enabling an Unconstitutional Prior Restraint

The appearance of partiality is further amplified by the devastating real-world impact of the Court's inaction. While the Court kept this action in an indefinite holding pattern, the Defendant actively weaponized the unresolved federal cloud to carry out a systematic lockout of the Plaintiff across the state judiciary.

As documented in the accompanying record, FPUBOT leveraged an *ex-parte* state restriction to place Plaintiff's name onto the Master Registry of Vexatious Litigants without cause. This administrative listing directly violates Section 68.093, Florida Statutes, because Plaintiff's record is defined by substantive litigation successes—including an 11-day federal jury trial resulting in a favorable verdict in *DeBose v. USFBOT* (M.D. Fla. Case No. 8:15-cv-02787) and a complete professional clearance by the Wisconsin Supreme Court.

Because this Court refused to promptly rule on a bar order that the Eleventh Circuit had already narrowed, subordinate state courts used the federal stagnation to complete the "administrative deletion" of Plaintiff's active claims, including unrelated probate and wrongful

death dockets. When a federal court's prolonged delay functions to foster an unconstitutional prior restraint in secondary forums, its refusal to act ceases to be a matter of mere docket management and becomes an instrument of active prejudice.

**V. Rebuttal of Anticipated Defenses**

**A. The Respondent(s) May Contend That Plaintiff Requested a Stay Pending SCOTUS Review**

The Defendant and/or the Court may argue that any delay in these proceedings was self-inflicted because the Plaintiff requested a stay while a petition for writ of certiorari was under review by the Supreme Court of the United States. This argument is a misdirection that ignores the chronological reality of the docket:

1. The Court issued its groundless Order to Show Cause on May 9, 2025. Long before the Plaintiff sought a stay to preserve judicial resources pending the high court's review, this Court had already disrupted the natural progression of the litigation.

2. Crucially, the Court issued a **second denial of Plaintiff's motion for default** prior to the imposition of any stay. This second affirmative denial proves that the Court's hostility toward enforcing Rule 55 was an independent, structural choice made before the SCOTUS-related stay request ever altered the case timeline. The stay did not cause the default denial; the Court's preemptive denials caused the need to preserve the record via a stay.

**B. The Respondent(s) May Argue That Administrative Closure Allowed Reopening "At Any Time"**

The Court may further argue that by administratively closing the case, it merely placed the matter in a temporary holding pattern that the Plaintiff could move to reopen at any time, thereby neutralizing any claim of prejudice. This argument fundamentally distorts the legal effect of an administrative closure under Eleventh Circuit jurisprudence.

The Eleventh Circuit has explicitly established that an administrative closure is a clerical "decisional tool" used solely for docket management, which does not constitute a final judgment, does not terminate a case, and does not alter the substantive legal status of the litigation. *Fla. Ass'n for Retarded Citizens v. Bush*, 246 F.3d 1296, 1298 (11th Cir. 2001) (confirming that an administrative closure is a docket-clearing mechanism that leaves the case pending on the court's books). Furthermore, a district court structurally missteps when it uses open-ended administrative maneuvers or stays to indefinitely stall rulings on critical, case-dispositive procedural dynamics. *See, by analogy, Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353 (11th Cir. 1997) (finding an abuse of discretion when a district court permits prolonged docket stagnation on threshold issues rather than resolving pending foundational matters).

By transforming a simple screening question into an administrative closure, the Court went far beyond a standard temporary stay. The Court used the closure to systematically deny all of Plaintiff's subsequent filings and dispositive motions as "premature."

Telling the Plaintiff she could "reopen at any time" is entirely illusory when the Court's own groundless May 9, 2025 OSC stood as an absolute, unresolved gatekeeper. The Court created a procedural paradox: it refused to rule on the OSC, used the unresolved OSC to administratively close the file, and then used the administrative closure to deny the Plaintiff the ability to enforce a Rule 55 default. This shifting of procedural targets directly insulated FPUBOT, granting them a total pass on their filing default while stripping Plaintiff of active forum protections.

## VI. CONCLUSION

The objective facts demonstrate that this Court's groundless Show Cause Order and subsequent 14-month freeze served a dual, non-neutral purpose: it granted a non-compliant state entity a second bite at the apple under Rule 55, while providing a protective window for that same entity to enforce an unconstitutional prior restraint across multiple jurisdictions. Because a reasonable person would harbor profound doubts regarding the structural fairness of these proceedings, disqualification is required under 28 U.S.C. § 455(a).

**WHEREFORE**, Plaintiff respectfully requests that the Honorable William F. Jung disqualify himself from this matter and request that the Clerk reassign this case to a different District Judge within the Tampa Division.

**Dated: July 23, 2026.**

Respectfully submitted,

/s/ Angela DeBose
Angela DeBose
1107 W. Kirby Street
Tampa, FL 33604
813-932-6959
Plaintiff, *Pro Se*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this **23rd day of July, 2026**, a true and correct copy of the foregoing *Plaintiff's Consolidated Motion for Disqualification of Judge William F. Jung and Memorandum of Law in Support* was filed with the Clerk for filing, which once docketed will automatically send a Notice of Electronic Filing (NEF) to all counsel or parties of record registered to receive electronic service in this matter, including:

**Nicholas T. Zbrzeznj, Esq.**
Southern Atlantic Law Group, PLLC
290 1st St S, Winter Haven, FL 33880-3271
Email: nick@southernatlanticlaw.com
*Counsel for Defendant FPUBOT*

**Dated: July 23, 2026**.

Respectfully submitted,

*Angela DeBose*

Angela DeBose

## CERTIFICATE OF CONFERRAL (EXEMPTION)

Pursuant to Middle District of Florida Local Rule 3.01(g), Plaintiff certifies that a certificate of conferral is not required for this filing because it is a motion for disqualification and recusal of the presiding District Judge. Under uniform federal practice, a party seeking the disqualification of a judge under 28 U.S.C. § 455(a) cannot be required to negotiate or seek the opposing party's consent as a prerequisite to filing, as the matter rests strictly within the court's objective ethical and statutory obligations.

**Dated: July 23, 2026**.

Respectfully submitted,

*Angela DeBose*

Angela DeBose